### MOORE v. VOSBURGH.

(Supreme Court, Appellate Division, Fourth Department. November 12, 1901.)

ORAL CONTRACTS—STATUTE OF FRAUDS.

Plaintiff paid defendant $1,500 to have a certain amount of stock in a certain corporation transferred to plaintiff's husband, and on the oral agreement that defendant would repay the money on demand at any time after one year, provided plaintiff did not within one year receive a 20 per cent. profit on the money. *Held*, that the contract, not being possible of performance within one year, was void under the statute of frauds.

Appeal from trial term, Erie county.

Action by Lou P. Moore against John L. Vosburgh. From a judgment in favor of defendant, and from an order denying plaintiff's motion for a new trial, made on the minutes of the court, plaintiff appeals. Affirmed.

The action was commenced on the 1st day of March, 1898, to recover the sum of $1,500, with interest,—the amount which it is alleged the defendant orally agreed to pay to the plaintiff, on demand, at any time subsequent to one year from the date of said agreement.

Argued before ADAMS, P. J., and McLENNAN, SPRING, and WILLIAMS, JJ.

Henry L. Taylor, for appellant.
Eugene M. Bartlett, for respondent.

McLENNAN, J. The facts are not in dispute. On the 23d day of September, 1893, the Buffalo Gas Saving Company, a copartnership composed of Alfred Hall and John L. Vosburgh, parties of the

first part, said Hall and Vosburgh, parties of the second part, and George P. Moore, the husband of the plaintiff, party of the third part, entered into an agreement in writing which provided, in substance, that the second parties should prosecute their applications for certain letters patent pertaining to a gas governor, and that they would transfer to George P. Moore, party of the third part, the sole right to sell the "Economist gas governor" in certain counties of the state for five years, under certain conditions and restrictions. The parties of the second part further agreed that at any time prior to December 1, 1893, the party of the third part might, at his option, purchase from the second parties a one-fifth interest in all business profits and property of the parties of the first part, and become a copartner in said business to that extent. The party of the third part agreed, in case he exercised said option, to pay to the second parties on or before December 1, 1893, the sum of $1,500 in cash, and the further sum of $500 out of his share of the first profits of the business, and he thereupon should become a member of the firm as from September 1, 1893. Thereafter, and on the 23d day of December, 1893, Vosburgh, Hall, and Moore entered into another contract in writing, by which, after reciting the contract of September 23d, it was agreed that Moore should receive one-fifth part of the stock of a corporation to be organized and called the Buffalo Gas Saving Company, and to carry on the business of the former copartnership referred to in the agreement of September 23d, which stock said Moore agreed to receive in lieu of his interest in the copartnership, and agreed to release Vosburgh and Hall from their obligations as members of the copartnership, and they released him from the payment of $250 of the $500 that he promised to pay into the copartnership out of his profits. After executing this last contract Moore was obligated to pay the sum of $1,500 mentioned in the contract of September 23d, in order to obtain a one-fifth interest in the corporation. Moore, the plaintiff's husband, did not have the $1,500 with which to obtain such interest and to pay for the stock to be issued to him. The plaintiff was thereupon interviewed by the defendant Vosburgh in the presence of her husband, and solicited to make such payment in behalf of her husband, with the result that she did pay said sum of $1,500 to said corporation, handing the money to Vosburgh upon the verbal agreement on the part of Vosburgh that he (Vosburgh) would repay to plaintiff the said sum of $1,500, "on demand, at any time subsequent to one year from the date of said oral agreement, provided plaintiff did not within one year receive a profit of at least twenty per cent. of said sum of $1,500." One-fifth of the stock of said corporation was thereupon issued to plaintiff's husband. The business of the corporation was conducted by Hall, Vosburgh, and Moore, and no profits were realized, or at least none were paid to the plaintiff or to plaintiff's husband, during the first year of the corporation's existence. After the expiration of the year the plaintiff demanded of Vosburgh the $1,500 paid by her, and upon the trial offered to surrender the stock which had been issued to her husband, all with her husband's consent, in open court. The defendant refused to pay such sum, and this action was commenced.

In his amended answer the defendant set up as a defense, among others, to plaintiff's demand, the statute of frauds, alleging that the contract upon which the plaintiff seeks to recover was not in writing, and was not to be performed within one year. We think the statute precludes a recovery by the plaintiff, and that defendant's motion for a nonsuit was properly granted. Concededly, the agreement was not in writing. Was it to be performed, in whole or in part, within one year from the making thereof? It is apparent that no action could have been maintained against the defendant to enforce his promise to pay to the plaintiff $1,500 until after the expiration of one year. By the terms of the agreement he had a full year—had until the expiration of the last day of the year—to cause a profit of 20 per cent. to be made, and to pay to the plaintiff; and, if he had done so at any time before the expiration of the contract period, he would have fully kept his agreement. But it is urged that the defendant might, at his option, have discharged the obligation at any time before the expiration of the year, and that, therefore, within the rule laid down in Blake v. Voigt, 134 N. Y. 69, 31 N. E. 256, 30 Am. St. Rep. 622, the statute does not apply. In that case it appeared that on November 27, 1888, the parties entered into an oral agreement by which the defendants, who were commission merchants, agreed to pay to plaintiff a specified commission on all goods the plaintiff could influence to be sent to the defendants for sale for one year, beginning December 1st thereafter; either party having the privilege of terminating the contract by notice in June. Under the option the contract was terminated in June by the defendants, and it was held that the plaintiff could recover; that, the option having been exercised, the agreement was taken out of the statute of frauds, and was to be performed within one year, within the contemplation of the parties. In that case the court said (page 75, 134 N. Y., page 257, 31 N. E., and page 626, 30 Am. St. Rep.):

"Where the parties agreed to carry on business for a period exceeding one year, or until the happening of an event which may transpire before the end of a year, we think that by principle, as well as by the weight of authority, the contract is protected from the obligations of the statute."

The rule is stated in First Baptist Church v. Brooklyn Fire Ins. Co., 19 N. Y. 305, as follows:

"If the obligation of the contract is not, by its very terms or necessary construction, for a longer period than one year, it is a valid agreement."

The application of such a rule does not make valid the agreement in question. Its obligation continued until the full expiration of the year. Until then it could not be discharged. It is suggested that the defendant might have paid the profits before the expiration of the year, but it could not be known until its expiration whether or not the business of the year would yield profits. If the business had resulted in profits during the first six months after the agreement in question was made, they might have been all lost or dissipated in the last hour of the contract period, so that the year's business would show a net loss instead of profits; and if the profits so earned during said six months had been paid to the plaintiff out of the funds

of the corporation, and such profits had been wiped out and lost as the result of the business for the entire year, good morals, at least, would haye required the plaintiff to refund to the corporation the moneys received by her, because her agreement was that she should not receive profits unless they existed as a result of the business for an entire year. Whether profits would result or not, as we have seen, could not be known with certainty to either party to the agreement until the expiration of the year, and therefore there was no way in which the defendant could properly discharge his obligation to the plaintiff by the payment to her of profits; and, as we have also seen, he was not obligated to make personal payment to her of the sum advanced by her, and which went into the business of the corporation, until after the expiration of the entire year.

Lapham v. Whipple, 8 Metc. (Mass.) 59, 41 Am. Dec. 487, is a case which arose under the Massachusetts statute of frauds, which is substantially the same as our statute, and involved a state of facts almost identical with the facts in the case at bar, and it was held that the agreement there being considered was within the statute. The court said:

"An agreement made by one party who sold a patent right that he would refund the price if the purchaser did not in three years realize the amount on the profits is manifestly within the statute. The promisee might have realized the amount in less than a year, whereby the promisor would have been discharged from his liability, but his promise would not take effect and he be liable to an action for a nonperformance until the expiration of three years."

Again, it was said in Bartlett v. Wheeler, 44 Barb. 162, that "the possibility of defeasance does not make it the less a contract not to be performed within the year."

But the citation of authorities would seem to be unnecessary. The contract was not in writing, and, upon the conceded facts in this case, we think it clear that the agreement alleged by the plaintiff in her complaint, and proved upon the trial, was not to be, and could not be, performed within one year, and was therefore within the statute of frauds, and that the plaintiff is not entitled to recover. Having reached this conclusion, it is unnecessary to consider the other questions involved upon this appeal. It follows that the judgment of nonsuit and the order denying plaintiff's motion for a new trial should be affirmed, with costs.

Judgment and order affirmed, with costs. All concur.